UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                          Chapter 7 Case

Robert Laing,                          Case No. 9:04-bk-3621-ALP

        Debtor.
_____/

MEMORANDUM DECISION UPON
REMAND OF ORDER APPROVING COMPROMISE

    This matter is before the Court on remand following a
reversal of an order approving a compromise ("Compromise Order")
entered into by Robert E. Tardiff, Jr., as chapter 7 trustee in
this bankruptcy case ("Trustee") and R. Todd Nielson, a creditor
of this estate in his capacity as trustee in the chapter 7 case
of Reed F. Slatkin pending in the Central District of California
("Slatkin Trustee").[1]  In its Opinion and Order the District
Court directed this Court, on remand, "to enter an amended order
adequately setting forth the basis for approval" of the
Compromise Order.[2]

I.    Procedural Background

The basis for the District Court Order is as follows:

    The Orders were entered without a hearing.

                    *    *    *

    No hearing was conducted and therefore no transcript
    is available to ascertain whether the relevant factors
    were considered on the record.  Additionally, the
    Orders fail to state the factors considered, and do
    not specifically address why the objections were
    overruled.  Without an adequate explanation for the

---

[1] Order on Trustee's Motion for Authority to Compromise (Doc. No. 116).  The
District Court also reversed the related order on the Trustee's objection to
the Creditor's claim which was entered as a result of the approval of the
compromise.  See Order on Trustee's Objection to Claim No.5 (Doc. No. 117)
("Claim Order").  Disposition of the Compromise Order will also dispose of
the Claim Order.
[2] Opinion and Order of the United States District Court of December 17, 2007,
Case No. 2:07-cv-199-FtM-29 (Dist. Ct. Doc. No. 13) ("District Court Order").

> basis of the ruling, the District Court cannot conduct
> a meaningful review on appeal, and remand is
> appropriate.[3]

It is apparent that on appeal neither Arnstein & Lehr, LLP, as the creditor objecting to the compromise below and the appellant before the District Court ("Appellant"), nor the Trustee, as appellee, brought to the District Court's attention the fact that there had been two hearings ("Hearings") conducted with respect to the motion to compromise at which both the Appellant and Trustee were present and participated.   Moreover, the Trustee chose not to participate at all in the appeal -- notwithstanding the District Court's order directing a response to be filed to the opening brief filed by the Appellant.[4]

Accordingly, a review of the record is appropriate, to include a review of the transcripts of the Hearings that were not supplied to the District Court by either party.

II.  Findings of Fact

A. The Slatkin Claim

The relationship between the Slatkin Trustee and Robert Laing ("Debtor") began in September of 2002, when the Slatkin Trustee instituted an adversary proceeding in the Bankruptcy Court for the Central District of California alleging that the Debtor received fraudulent transfers in a Ponzi scheme ("California Adversary Proceeding").   In February of 2004, the Debtor filed his chapter 7 petition in this Court, staying the California Adversary Proceeding.   Robert E. Tardif, Jr. was appointed the chapter 7 trustee in the Debtor's case.

Thereafter, the Slatkin Trustee timely filed a proof of claim in this Court for the amounts of the fraudulent transfers that were the subject of the California Adversary Proceeding ("Slatkin Claim").[5]   These are described in a detailed schedule of disbursements made to the Debtor over the period of the Ponzi scheme, as detailed in Exhibit "A" to the Slatkin Claim.   The Slatkin Claim is also based on a monetary sanction award imposed

---

[3] District Court Order at 5, 7.
[4] The Court infers that the Trustee's lack of participation in the appellate process is economically motivated based on the fact that the assets of this estate consist of the total sum of $36,000 of which (as discussed below) the Trustee estimates $6,000 has already been consumed by fees.   Participation in an appeal or other substantial litigation will substantially erode if not completely dissipate the estate, denying to creditors even a small percentage on their claims.
[5] See Claim 5-1 filed in this case.

by the Bankruptcy Court for the Central District of California against both the Debtor and the Appellant (who represented the Debtor in the California Adversary Proceeding).  This is described in Exhibit "B" to the Slatkin Claim.  The total Slatkin Claim is in the amount of $5,349,131.89.

The Appellant also filed a proof of claim for unpaid legal fees in connection with services rendered on behalf of the Debtor in the California Adversary Proceeding.[6]  There were only three other claims filed in this case, which in the aggregate total $5,963.07.  Accordingly, the claims held by the Slatkin Trustee and the Appellant constitute nearly all of the unsecured debt in this case.

B. The Trustee's Objection to the Slatkin Claim

In the process of administering the bankruptcy estate, the Trustee objected to the Slatkin Trustee's claim on September 21, 2006 ("Trustee's Objection") (Doc. No. 106).  Although the Appellant could have also filed an objection to the Slatkin Claim as a creditor under Bankruptcy Code section 502(a), it has not done so.  Of course, if it did so, it would bear the cost of litigating the objection, rather than the estate, as is the case where a trustee prosecutes a claims objection.

The sole basis for the Trustee's Objection is that the claim is "contingent and unliquidated."  Notably, the Trustee did not object to the underlying liability of the Debtor for any distributions he received from the Ponzi scheme.  The prevailing view shared by bankruptcy courts nationwide is that establishing the existence of a Ponzi scheme is sufficient to prove a Debtor's actual intent to defraud for purposes of establishing the liability of recipients of distributions from a Ponzi scheme.  *In re Old Naples Securities, Inc.*, 343 B.R. 310, 320 (Bankr. M.D. Fla. 2006) (citing among other cases *In re McCarn's Allstate Finance, Inc.*, 326 B.R. 843 (Bankr. M.D. Fla. 2005)).  In light of that prevailing view, it is not surprising that the Trustee did not object to the Debtor's liability as a recipient of a transfer made as part of a Ponzi scheme.

It is also apparent that the gravamen of the Trustee's Objection is that the Slatkin Claim is unliquidated rather than contingent.  "A claim is contingent as to liability if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event . . . ."  *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr. S.D. Tex.

---

[6] *See* Claim 4-1 filed in this case. The claim is for $91,744.91.

1980), *aff'd*, 646 F.2d 193 (5th Cir. 1981).[7]  The most commonly
cited example of a contingent claim is a claim for potential
contribution or reimbursement held by a guarantor.  *Id.*  The
guarantor's claim is contingent on being called on to honor the
liability to the third-party creditor.  This is not the
situation here.  There is no contingency as to the liability of
a recipient of funds from a Ponzi scheme.  *Old Naples*, 343 B.R.
at 320; *McCarn's Allstate*, 362 B.R. at 850-51; *see also In re
AFI Holding, Inc.*, 2008 WL 1734583 (9th Cir. Apr. 16, 2008)
("The mere existence of a Ponzi scheme is sufficient to
establish actual intent under § 548(a)(1)(A).").

    Accordingly, the primary basis for the Trustee's Objection
to the claim is that the claim is unliquidated.  While that is a
valid basis for objection, it is not a valid basis for
disallowance of the claim.  Rather, for unliquidated claims to
receive any distribution from a bankruptcy estate the amount of
the claim needs to be determined.  This can be accomplished
through the claims objection process (the method employed in
this case), which is initiated through a contested matter under
Bankruptcy Rules 3007 and 9014 and in which the amount of the
claim would need to be determined.  In cases where liquidation
of the claim would unduly delay the administration of the case,
such claims can also be estimated pursuant to Bankruptcy Code
section 502(c)(1) for purposes of allowance in the case.

        C. The Motion to Compromise

    A preliminary hearing was scheduled on the Trustee's
Objection for November 9, 2006.  During the intervening period
leading up to the hearing, negotiations ensued between the
Trustee and the Slatkin Trustee with respect to the Trustee's
Objection.  These negotiations resulted in a compromise, which
is described in the Compromise Motion (Doc. No. 109) in
pertinent part as follows:

                    TERMS OF COMPROMISE

        Claim No. 5 will be allowed as an allowed, general
        unsecured claim in the amount of $4,000,000.00.

                    REASON FOR COMPROMISE

        This compromise . . . will save the estate from an
        unnecessary, and possibly unproductive, expenditure of

---

[7] The *All Media* case is binding precedent in the Eleventh Circuit. *In re
Trusted Media Holdings, L.L.C.*, 2008 WL 1816396 *7 (11th Cir. Apr. 23, 2008)
(citing *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981)).

> legal fees and costs . . . .   [T]he Trustee has little
> doubt that the Debtor was the recipient of a
> substantial amount of money via a ponzi scheme run by
> Reed E. Slatkin, although the exact amount may be in
> question. The Trustee believes that allowing the
> claim, but in an amount that is more than
> $1,000,000.00 lower than the claim amount, more than
> addresses the concern about forcing the creditor to
> liquidate the exact amount of the claim.

Compromise Motion at 1-2.

Upon receipt of the Compromise Motion, the Court
immediately cancelled the pending hearing on the Trustee's
Objection and scheduled a hearing on the Compromise Motion for
December 1, 2006.   Thereafter, both the Debtor and the Appellant
filed objections to the proposed compromise.[8]

### D.  The Hearings on the Motion to Compromise

#### 1. Hearing of December 1st

A hearing was held as scheduled on December 1, 2006, on the
Compromise Motion ("December 1st Hearing").   In attendance were
the Trustee and counsel for both the Debtor and the Appellant.
At the hearing, there was no argument that the Slatkin Claim
could be defeated or that the agreed amount to be allowed for
the Slatkin Claim was objectionable.   Rather, the sole basis
discussed at the December 1st Hearing for objecting to the
compromise related to the *res judicata* effect that approval of
the compromise may have on litigation that was still ongoing in
California.   This is reflected in the following colloquy:

> THE COURT: Oh, okay, I get the picture. And Mr.
> Laing is concerned about the effect that this
> settlement might have on the bankruptcy case in
> California?

> Trustee: Yes, because he has certain claims. My
> understanding is that he has certain claims that are
> pending either in the bankruptcy case out there due to
> investments via his IRA, which are claimed as exempt
> and are fine. And I think what I was going to ask for
> today, because I had a conversation with Luis Salazar,
> who represents the trustee in the California case, I'm

---

[8] Objection to Motion for Authority to Compromise Controversy filed by Debtor
(Doc. No. 112); Opposition to Motion for Authority to Compromise Controversy
filed by Arnstein & Lehr LLP (Doc. No. 113).

prepared and I told [Appellant] Arnstein -- or is it Arnstein & Lehr?

Appellant's Attorney: That is correct.

Trustee: An attorney called me. I did not necessarily have any issue having some provision in the order saying it has no effect on whatever claims are pending out there. But last night when I spoke to Mr. Salazar I agreed that, subject to the Court approving it, that we'd go ahead and continue this hearing to early next month so that language potentially can be worked out. I didn't have a chance to speak with [Debtor's Counsel] Mr. Gomez. But my understanding is the two objections are essentially the same and the same concerns. So I guess I'll let them address whether that's –

THE COURT: Okay. So, the proposal Mr. Tardif is making is we roll this over to December 14th, or thereabouts, to give the parties a chance to see if they can come up with acceptable language, which would make it clear that what happened here would not have a collateral estoppel effect on litigation pending in California.

Trustee: That's correct, Judge.

THE COURT: Okay. Let me hear from --

Debtor's Attorney: Exactly, Your Honor, that's correct.

Appellant's Attorney: That's correct, although what we had spoken about, Your Honor, is a little bit longer, about 30 days or so, if that would be acceptable?

THE COURT: Okay. Well, it's either December 14 or January. I'll leave it up to you.

\*   \*   \*

THE COURT: Okay. And, Cissy, does that work for you? We can put that in the January calendar?

LAW CLERK: Sure.

Transcript of December 1st Hearing at 4-6 (Doc. No. 130)
("December 1st Transcript").

### 2. Hearing of January 19th

Accordingly, the Court conducted a second hearing on the
Compromise Motion on January 19, 2007 ("January 19th Hearing").
All parties were again present and represented by counsel.
Notwithstanding the hopes expressed at the December 1st Hearing,
matters had not been completely resolved.  While the issue that
had been the focus of the December 1st Hearing dealing with the
*res judicata* effect of the compromise had been resolved to the
satisfaction of the Debtor and the Appellant, the Appellant
still had concern that allowing the Slatkin Claim in the amount
of $4,000,000 would dilute the distribution such that no other
creditor would have any possibility of a meaningful
distribution.[9]

Faced with this remaining objection, it was up to the Court
to either (1) schedule a further evidentiary hearing to consider
the Compromise Motion or (2) to rule on the record that had been
established by the papers on file with the Court and the
proffers made by counsel in open court at the two hearings.  It
is the Court's practice not to rule based simply on proffers if
any party objects and requests an evidentiary hearing.  No party
objected in this case to the Court's proceeding to a ruling
without further evidence based on the record before it.  In
fact, counsel for the Appellant never asked for an evidentiary
hearing or objected to the representations made by counsel at
the two hearings conducted on the Compromise Motion.  To the
contrary, after stating his client's objection, counsel for the
Appellant stated, "[a]t this point, I'll leave it up to the
Court's discretion as to where it should go from there."[10]

In exercising this discretion, the Court considered the
following factual basis.  First, other than resolution of the
Slatkin Claim, this case has been fully administered.[11]  The
estate only has approximately $37,000 available for
administrative expenses and general unsecured claims.[12]
Administrative expenses as of the January 19th Hearing were
between $6,000 and $7,000, leaving a net for distribution of
approximately $30,000.

---

[9] Transcript of January 19th Hearing at 8 (Doc. No. 135) ("January 19th
Transcript").
[10] *Id.* at 8:10-12.
[11] *Id.* at 4:9-10.
[12] *Id.* at 4:21-23.

Second, and as discussed above, the Trustee's Objection is based on the need to liquidate the claim. Based on the documentation reviewed by the Trustee, there appears to be no question about the fact that the transfers in question were distributions as part of a Ponzi scheme.[13] Accordingly, it is unlikely that the process of liquidation of the Slatkin Claim will result in a substantial claim given the detailed itemization of transfers made to the Debtor as set forth in Exhibit "A" to the Slatkin Claim.

Third, whether this case is settled at the $4,000,000 level or litigated to conclusion, anything short of total denial of the claim will still result in a substantial amount owed with respect to the Slatkin Claim. For example, assume the Trustee were to undertake the task of litigating this claim and was able to reduce the Slatkin Claim down to $1,000,000 which would be a substantial achievement given the documented amounts received by the Debtor. In this situation there would be little benefit to anyone from such an exercise. That is, given that there are only two significant creditors in this case -- the Slatkin Trustee that would then hold a claim for $1,000,000 and the Appellant that holds an allowed claim for $91,000 -- little would be distributed to the Appellant even if the Slatkin Claim were reduced to $1,000,000. The Appellant's claim of $91,000 would still only receive eight percent of any distribution or approximately $2,400.

Fourth, if the Trustee were to undertake the type of litigation necessary to achieve such a result, conceivably every cent in this estate would be consumed by the Trustee's counsel's fees, with the result that there would be no recovery for anyone. Given this potential outcome, it is not surprising that the Appellant has exhibited no interest in prosecuting this claim objection. In this respect, the following colloquy with counsel and the Court is instructive:

> Court: So, I think the bottom line is that your alternative, Mr. Cohn, is to join in the objection to the claim and litigate it. Obviously, your client is not going to do that because of the cost benefit analysis . . . .

> Mr. Cohn: I recognize that as well, Your Honor.[14]

Immediately following this colloquy, the Court made the following ruling in open court:

---

[13] *Id.* at 4:14.
[14] *Id.* at 10:12-19.

So, what I'll do is this, I'll grant the motion
for authority.  I'll approve the compromise based
on the *Justice Oaks* factors, finding that those
factors have been satisfied.  I'll accept the
representations that have been made here today in
court and in the motion as having a factual
basis.  I'll also find that as a matter of law
that the doctrine of res judicata and its cousin
collateral estoppel do not apply because the
parties here are different.  Moreover, the
inducements and justifications and reasons for
compromising in the context of bankruptcy are
entirely different than those that would be
present in any other action in light of the
Trustee's duty to wind up these cases promptly
and the fact that the estate, at best, is going
to be a less than 1 percent distribution to
unsecured creditors.

January 19th Transcript at 10:20-11:11.

E. Order on the Compromise Motion

On February 16, 2007, this Court entered the Compromise
Order based on the Court's oral ruling at the January 19th
Hearing.  The Compromise Order does not contain specific
findings of fact or conclusions of law.  Rather, as permitted by
Rule 52(a), the reasons for the Court's ruling were stated
orally and recorded in open court.[15]

For this reason, the Compromise Order states that it is
entered "for the reasons stated in open court."  Although the
District Court may have interpreted this phrase as boilerplate
language included in all this Court's orders, in fact this term
is only used by this Court when a hearing is held on notice to
all parties, a ruling is made, and the reasons for the ruling
are stated orally and recorded in open court.  Regardless of the
District Court's perception of the phrase, the Appellant was
present at both hearings held by this Court on the matter and
was therefore aware of the meaning and significance of the
phrase.  The practice of making oral opinions in this fashion is
considered "the most efficient and economical method of meeting
the requirements of Rule 52."[16]  Consequently, this is the most

---

[15] Fed. R. Civ. P. 52 is made applicable to contested matters by Fed. R.
Bankr. P. 7052 and 9014.
[16] 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 52.13(2) (3d ed. 2004).

common method used by the bankruptcy courts in dealing with
heavy caseloads, as is the case in the Ft. Myers Division.

Pursuant to Federal Rule of Bankruptcy Procedure 8006, an
appellant must designate the items to be included in the record
on appeal.  "The record on appeal shall include . . . any
opinion, findings of fact, and conclusions of law of the court."
Fed. R. Bankr. Pro. 8006.  When the Court makes a ruling in open
court and references its oral ruling in an order pursuant to
Rule 52, a transcript from that hearing is necessary in order to
ascertain the substance of the ruling referenced in the Court's
order.  "While [Bankruptcy Rule 8006] does not expressly mandate
that the 'record on appeal' include all transcripts of the
proceedings below, its provision make clear that those documents
which include 'findings of fact' or 'conclusions of law of the
court' are deemed part of the record, including any transcripts
. . . ."  *In re Harris*, 464 F.3d 263, 269 (2d Cir. 2006).
However, in the appeal to the District Court the appellant did
not include any transcript from either the December 1st Hearing
or the January 19th Hearing and therefore the District Court did
not have the benefit of their contents in making its decision.

III. Conclusions of Law

As the District Court appropriately noted, objections to a
proposed compromise do not preclude approval by the court.
District Court Order, at 6 (*citing In re Thompson*, 965 F.2d
1136, 1141 n.5 (1st Cir. 1992)).  Nor is there a requirement
that the court conduct an evidentiary hearing on a contested
proposed compromise.  *Id.* (*citing Depoister v. Mary M. Holloway
Found.*, 36 F.3d 582, 586 (7th Cir. 1994)).

"The proponent of a motion to compromise bears the burden
of proof and (has) the burden of persuasion to establish that
the settlement is both reasonable and in the best interests of
the estate . . . ."  *In re Almengual*, 301 B.R. 902, 907 (Bankr.
M.D. Fla. 2003)(*quoting Shaia v. Three Rivers Woods, Inc. (In re
Three Rivers Woods, Inc.)*, 2001 WL 720620, *6 (Bankr. E.D. Va.
March 20, 2001)).

In evaluating a proposed compromise the bankruptcy court
assesses the facts and circumstances as they apply to the
compromise by considering four factors.  *Wallis v. Justice Oaks
II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549
(11th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990) ("*Justice
Oaks*").  The relevant factors are: (a) the probability of
success in the litigation; (b) the difficulties, if any, to be
encountered in the matter of collection; (c) the complexity of

the litigation involved, and the expense, inconvenience and
delay necessarily attending it; and (d) the paramount interest
of the creditors and a proper deference to their reasonable
views in the premises ("*Justice Oaks* Factors").   *Id.*

The Court's function is to investigate the issues and
determine whether the settlement "falls below the lowest point
in the range of reasonableness."   *In re Mack*, 2006 WL 4120007,
*3 (Bankr. M.D. Fla. Dec. 19, 2006) (citation omitted).   A
proposed compromise should be approved unless it produces less
than the least amount that litigation could reasonably yield.
*In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla.
1993) (citation omitted).

A. Probability of Success in Litigation

As discussed above, given the documentation reviewed by the
Trustee, there is little probability that the Debtor, and in the
turn the estate, will not be found liable as a recipient of
fraudulent transfers from a Ponzi scheme. The case law in this
area favors the plaintiff in that once a Ponzi scheme is shown
to have existed, then all that the plaintiff needs to show is
that the defendant was the initial transferee of transfers from
the scheme. *Old Naples*, 343 B.R. at 320 (citations omitted).

B. Difficulties to be Encountered in Collection

This factor involves practical considerations. For example,
obtaining a substantial judgment against an insolvent defendant
is seldom of any benefit.   This is an analogous situation
involving an objection to a claim.   Here, even if the Trustee is
successful in the litigation over the Slatkin Claim, most likely
it will result in very little, if any, benefit to the estate.
This is because of the small amount available for distribution -
- approximately $30,000.   Whether the Slatkin Trustee's claim is
allowed in the amount of $5 million, $3 million, or $1 million,
the recovery for the Appellant will be at most approximately
eight percent.   Moreover, the expense of achieving this
"successful" outcome would no doubt entirely consume the balance
available for unsecured creditors, leaving nothing for anyone
other than the administrative claimants.

C. Complexity, Expense, Inconvenience, and Delay of
   Litigation

This case was fully administered as of the time of the
Hearings on the Compromise Motion.   As noted at the January
19th Hearing, "the inducements and justifications and reasons

for compromising in the context of this bankruptcy case are
entirely different than those that would be present in any
other action in light of the Trustee's duty to wind up these
cases promptly and the fact that the estate, at best, is going
to be a less than 1 percent distribution to unsecured
creditors." January 19th Transcript at 11:4-11. This
principle was perhaps first expressed by the United States
Supreme Court in an 1874 decision:

> [The requirement of a speedy bankruptcy case] is a
> wise policy, and if those who administer the law
> could be induced to act upon its spirit, would do
> much to make the statute more acceptable than it is.
> But instead of this the inferior courts are filled
> with suits by or against [trustees], each of whom as
> soon as appointed retains an attorney, if property
> enough comes to his hands to pay one, and then
> instead of speedy sales, reasonable compromises, and
> efforts to adjust differences, the estate is wasted
> in profitless litigation, and the fees of the
> officers who execute the law.

*Bailey v. Glover*, 88 U.S. 342, 347 (1874). The Court is mindful
of the prudence of reasonable compromises, and finds the one
proposed by the Trustee in the instant case would avoid
unnecessary, potentially fruitless litigation.

### D. Interest of Creditors

Under no set of circumstances can the Court conclude that
it is in the interest of creditors to force the Trustee to
litigate the Trustee's Objection to the Slatkin Claim. All this
litigation would accomplish is to significantly deplete the
estate. The Slatkin Trustee would be directly harmed because
the little it would otherwise recover would go to the Trustee's
attorney's fees. Essentially, the Slatkin Trustee's money would
be used to fund the litigation to defend against the Slatkin
Claim. Moreover, even if such litigation were successful, the
Appellant would receive nothing because the same fund would be
expended prior to any distribution on account of the Appellant's
Claim. Clearly, it is in the best interest of creditors in this
case that the compromise be approved.

### IV.  Conclusion

The Court has considered the four *Justice Oaks* factors both
at the Hearings and again on remand in connection with this
opinion and determines that the proposed compromise warrants

approval.  Based upon the facts and proffers, the Court is satisfied that Trustee has carefully weighed his alternatives in determining that litigation of the Slatkin Claim in the bankruptcy court is not in the best interests of the estate.

The Court agrees with this analysis, based especially on the amount of money that will be left in the estate to distribute to unsecured creditors after payment of administrative expenses.  Any future litigation in this Court would be costly and result in delay, guaranteeing no recovery to any creditor.  Accordingly, the Court believes that the terms of the compromise fall well above the lowest point in the range of reasonableness, and that the bankruptcy estate and the creditors' interests are best served by a swift and efficient resolution of the pending claims.

Accordingly, it is

ORDERED:

1.    The Compromise Order is hereby vacated and this order is entered to set forth the basis for approval of the compromise.

2.    For the reasons set forth above, the Compromise Motion is granted.

3.    The Court specifically finds and holds that the entry of this Order shall not have any *res judicata* or collateral estoppel effect in any proceedings that are or may be pending in California or in any other legal proceedings.

4.    The Trustee's objection to claim number 5 is hereby sustained in part.  Claim number 5 shall be allowed as a general unsecured claim, but shall be reduced to the amount of $4,000,000.00.

DONE AND ORDERED at Tampa, Florida, on    **MAY 0 7 2008**    .

Michael G. Williamson
United States Bankruptcy Judge

Copies:
Parties
Clerk